UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MR. AND MRS. JOHN WEIMAR     CIVIL ACTION

VERSUS

LIBERTY MUTUAL INSURANCE COMPANY     NO: 17-CV-00584-BAJ-RLB

## RULING AND ORDER

Before the Court is Defendants' **Motion in Limine (Doc. 76)** and Plaintiffs' **Motion in Limine (Doc. 77)**. Oral argument is not required. For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' motion is **DENIED**.

I.     DEFENDANTS' MOTION IN LIMINE[1]

    A. Testimony Concerning Tom Sumner as a "Replacement" Expert

Defendants move to bar Plaintiffs from arguing at trial that Tom Sumner is a "replacement" expert for Martin Ellison and that Defendants acted in bad faith by retaining an additional expert during litigation. (Doc. 76-1 at p. 2). Defendants claim that Ellison was hired to explore the issue of whether water intrusion from the storm in February 2016 caused the mold outbreak, while Sumner was retained to conduct a holistic analysis of what caused the mold, generally. (*Id.* at p. 3). Defendants argue

---

[1] The underlying facts in this matter are fully set forth in the Court's Ruling and Order on Defendants' Motions for Summary Judgement (Doc. 95), and therefore shall not be repeated here.

1

that allowing Plaintiffs to claim that the decision to retain another expert was made in bad faith would be unfairly prejudicial. (*Id.*).

Plaintiffs claim that Ellison provided testimony that tends to discredit Defendants' other evidence, and that Defendants only retained Sumner to create a *post hoc* reason to deny Plaintiffs' claims, two years after the denial letter was sent. (Doc. 86-2 at p. 1-2).

"Bad faith means more than mere bad judgment or negligence; it implies a dishonest purpose or evil intent." *Vaughn v. Franklin*, 2000-0291 (La. App. 1 Cir. 3/28/01), 785 So. 2d 79, 86, *writ denied*, 2001-1551 (La. 10/5/01), 798 So. 2d 969. Plaintiffs have not presented enough evidence to establish a "dishonest purpose or evil intent" underlying the decision to switch expert witnesses. Accordingly, Plaintiffs are barred from suggesting to the jury that Summer's testimony is offered in bad faith.

### B. Testimony of Louis Fey

Defendants object to the listing of Louis Fey as a fact witness on the grounds that Fey was described by John Weimar as "an expert in the arena" and "an industry veteran," and will be used as an expert or a quasi expert witness at trial. (Doc. 76-1 at p. 4). Defendants also claim that Fey had no role whatsoever in Plaintiffs' claim, and as such, testimony from Fey would be inappropriate for a fact witness. (*Id.*).

Plaintiffs claim that Fey, in his capacity as the Vice President of Risk Management at BXS Insurance, Inc. ("BXS"),[2] was "on the front lines" of helping

---

[2] BXS was the insurance brokerage firm that placed Plaintiffs' coverage with Defendants. (Doc. 86-2 at p. 7).

Plaintiffs pursue their insurance claims with Defendants. (Doc. 86-2 at p. 7). Plaintiffs argue that Fey will only testify about events he experienced while helping Plaintiffs with their claim and not as an expert witness. (*Id.*).

Plaintiffs have established the relevance of Fey's testimony, and his adequacy as a fact witness. Further, there is no indication that Defendants will be unduly prejudiced by allowing Fey to testify. Plaintiffs have further averred that they do not intend to offer Fey as an expert witness. Finally, if during the trial, Defendants believe Fey's testimony is straying into the realm of what should be reserved for an expert witness, Defendants may raise an objection at that time. Defendants' request is DENIED.

### C. Testimony that Defendants acted in Bad Faith

Defendants request that the Court bar Plaintiffs from introducing testimony that Defendants acted in "bad faith." (Doc. 76-1 at p. 7). Defendants cite several cases which purport to establish that the testimony of a "bad faith expert" should be excluded, as such questions are within the purview of the court and the jury. See *Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, No. 06-7232, 2008 WL 1924242 (E.D. La. Apr. 23, 2008); see also *Thompson v. State Farm Fire & Cas. Co.*, 34 F. 3d 932, 941.

Plaintiffs claim that certain testimony concerning the reasonableness of actions taken by the parties involved in litigation can assist the trier of fact in making a determination of whether the decision to deny coverage was made in bad faith. (Doc.

86-2 at p. 11). Plaintiffs cite *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5th Cir. 1983) which instructs:

> Federal Rule of Evidence 704 abolishes the *per se* rule against testimony regarding ultimate issues of fact. The rule provides that testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

The Court agrees with Plaintiffs. Testimony regarding how claims such as these are normally processed may be helpful to the jury when it considers whether Defendants' actions in this case were appropriate. Further, if during trial, Defendants believe that Plaintiffs' witness are providing testimony that amounts to a legal conclusion, Defendants may raise an objection at that time. Defendants' request is DENIED.

### D. Testimony Referencing other Claims or Lawsuits

Defendants claim that testimony about other claims or lawsuits is irrelevant to the instant matter, and should therefore be excluded under Fed. R. Civ. P. 401. (Doc. 76-1 at p. 8). Defendants claim that this Court already ruled on the admissibility of past claims or lawsuits when it denied Plaintiff's motion for Defendants to disclose documentation relating to such information. (*Id.*).

The Court agrees with Defendants, and finds that evidence of prior claims or lawsuits is irrelevant under rule 401 to the circumstances presented in the instant matter. Defendants' request is GRANTED.

### E. Testimony Concerning Defendants' Citizenship, Size, or Revenue

Defendants request that any information to its size, citizenship, and revenues be excluded as irrelevant and unduly prejudicial. (Doc. 76.1 at p. 10).

4

Plaintiffs claim that it is difficult to tell where Liberty Mutual ends and West American begins, and that West American is merely a "shell company" to insulate Liberty Mutual from liability. (Doc. 86-2) at p. 15). Plaintiffs assert that certain information about West American's and Liberty Mutual's size and financial status may be relevant to determining if West American is was created as a shell company to further perpetuate allegedly fraudulent behavior. Further, Plaintiffs allege that the claims representative who made the decision to deny Plaintiffs' claim never set foot in Louisiana, which Plaintiffs assert bolsters their argument that Defendants acted in bad faith. To support this claim, Plaintiffs seek to introduce evidence of Defendants' size and citizenship. (*Id.*).

The act of creating such an entity in itself is not an unlawful act. However, Plaintiffs argue that the shell company is just one component of a larger fraudulent attempt to shield Liberty Mutual from liability. The Court agrees with Plaintiffs and finds that evidence of Defendants citizenship, size, and revenue are highly probative of the nature of Liberty Mutual's relationship with West American, and whether West American is merely a related corporate entity created to shield Liberty Mutual from liability. Further, this information does not appear to be unfairly prejudicial to Defendants. Defendants' request is DENIED.

### F. Testimony Concerning Plaintiffs' Premiums and Claim History

Defendants ask the Court to bar testimony concerning Plaintiffs' premiums and claims history because it may unduly suggest that Plaintiffs are owed coverage for damages because they had not previously filed a claim, and that they regularly

paid the policy premiums. (Doc. 76-1 at p. 10). Defendants claim that such information may confuse the jury, and be unduly prejudicial.

Plaintiffs counter by claiming that Defendants have opened the door for the admission of certain evidence to rehabilitate Plaintiffs' credibility because Defendants have alleged that Plaintiffs committed fraud while pursuing their claim. (Doc. 86-2 at p. 16). Plaintiffs cite *Soll v. Provident Love & Acc. Ins. Co.*, 2002 WL 1461891 at *5-6 (E.D. La. July 5, 2002), where the court opined:

> Suffice it to say, evidence of premium payments is part of the *res gestae*. The face of the payments and their total value have a probative value that is not outweighed by any potential for unfair prejudice.

The Court finds that *Soll* is inapplicable here. In *Soll*, the existence and amount of payments were deemed admissible in the context of a contractual dispute to establish that the plaintiff upheld his contractual obligations by paying his premiums. *Id.* at p. 5. Here, whether Plaintiffs paid the premiums on the insurance policy has not been raised as an issue by either party. Accordingly, the Court finds that such evidence lacks any probative value in the instant matter. Defendants' request is DENIED.

## II. PLAINTIFFS' MOTION IN LIMINE

### A. Lay Witness Testimony on Causation of Damages

Plaintiffs claim that the lay opinion testimony of Jeff Latil, Jeff Vicknair, Randy Cascio, and Derek Thornton (collectively "Challenged Witnesses") should be excluded. (Doc. 77-1 at p. 2). Plaintiffs claim that Latil is a maintenance worker whose opinions are "not based on scientific, technical or other specialized knowledge,"

6

as required under Fed. R. Evid. 701(c). (*Id.*). Plaintiffs argue that despite Defendants' designation of Latil as a lay witness who will "testify about facts and circumstances surrounding Plaintiffs' alleged damages," Latil's deposition includes testimony best left to an expert. (*Id.* at p. 3). Concerning Vicknair, Plaintiffs argue that Vicknair did not inspect the insured property after the storm, and therefore cannot offer testimony on the condition of the property. (*Id.* at p. 6). Plaintiffs make similar arguments concerning Cascio and Thornton's lack of requisite expertise to offer expert testimony about the causes of the damages to the insured property. (*Id.* at pp. 8-9).

Defendants claim that the Challenged Witnessed will only offer testimony based on their personal observations, as allowed under Fed. R. Evid. 701(a),(b). (Doc. 85-2 at p. 3). Defendants claim that the Challenged Witnesses are eyewitnesses who can testify about the condition of Plaintiffs' property. (*Id.*).

Here, the Challenged Witnesses' testimony is based on the individual witness' observations of the Insured Property. This testimony may be helpful to the finder of fact because the timing of the damage to the insured property is a central issue in this case. Plaintiffs' request is DENIED.

### B. Affidavit of Luann Mueller

Plaintiffs argue that the Affidavit of Luann Mueller ("Mueller") should be excluded as hearsay because of her untimely disclosure as a witness. (Do. 77-1 at p. 9). Plaintiffs claim that Defendants failed to list Mueller as a witness in response to Plaintiffs' interrogatory and in the pretrial order. Plaintiffs further argue that in addition to being untimely, Mueller's affidavit is inadmissible hearsay.

Defendants respond that they will not utilize Mueller's affidavit at trial. Thus, Plaintiff's request is DENIED AS MOOT.

**C. Defendants' Misrepresentation or Fraud Defense**

Plaintiffs argue that Defendants violated Federal Rule of Civil Procedure 8(c), which requires that any matter constituting an affirmative defense be set forth in a defendant's responsive pleading. (Doc. 77-1 at p. 13). Plaintiffs claim that this Court allowed Defendants to amend their answer to add a fraud-based affirmative defense sixteen months after Plaintiffs filed suit. (*Id.*). Plaintiffs claim that all critical deadlines had passed, and that Plaintiffs were deprived of the opportunity to conduct discovery concerning the added defense. (Id).

Defendants counter that Plaintiffs had ample time to raise an objection to the defenses, but failed to do so. (Doc. 85-2 at p. 11). Defendants also claim that they did not learn until August 8, 2018 that they may have a complete defense to Plaintiff's claims under the theory of fraud or misrepresentation, and requested to amend their answer shortly thereafter. (*Id.* at pp. 11-12).

The Court agrees with Defendants. Plaintiffs had approximately six months to file any number of motions to alter deadlines, re-open discovery, or otherwise challenge Defendants' evidence. The Court found good cause to allow Defendants to amend their answer to Plaintiff's complaint. Plaintiffs' request is DENIED.

**D. Testimony of Cheryl Chowdhuri**

Plaintiffs allege that the testimony of Cheryl Chowdhuri ("Chowdhuri") will include opinion testimony on the ultimate issues of coverage under the policy, and

therefore should be barred. (Doc. 77-1 at p. 15). Plaintiffs allege that the interpretation of an insurance policy should be left to the trier of fact, and that Chowdhuri's testimony will include legal conclusions relating to when the claimed damage occurred and whether the exclusions at issue apply. (*Id.* at p. 16).

Defendants claim that the handling of Plaintiffs' claims form the basis of Plaintiffs' bad faith claims against them. (Doc. 85-2 at p. 9). Defendants further argue that it is not uncommon for an insurance claims adjuster to testify as a lay witness. (*Id.*). Defendants argue that Chowdhuri's testimony will be based solely on how she handled Plaintiffs' claim. (*Id.*).

The Court agrees with Defendants. While Chowdhuri cannot testify as an expert witness, she is entitled to testify relative to the factors she relied on when evaluating and adjusting Plaintiff's claim during the course of her involvement with Plaintiff's claim. *See Burrell v. Allstate Prop. & Cas. Ins. Co.*, 2016 WL 4155007, at *2 (S.D. Miss. Aug. 4, 2016) (holding that allowing a lay witness to testify about firsthand knowledge will not confuse the jury or result in unfair prejudice). Plaintiffs' request is DENIED.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion in Limine (Doc. 76)** is **GRANTED IN PART AND DENIED IN PART.**

  a. Defendant's request for the Court to bar testimony concerning Tom Sumner as a "replacement" expert is **GRANTED**

b. Defendants' request for the Court to bar the testimony of Louis Fey is **DENIED**.

c. Defendants' request for the Court to bar testimony that they acted in bad faith is **DENIED**.

d. Defendants' request for the Court to bar testimony referencing other claims or lawsuits is **GRANTED**.

e. Defendants' request for the Court to bar testimony concerning Defendants' citizenship, size, or revenue is **DENIED**.

f. Defendants' request for the Court to bar testimony concerning Plaintiffs' premiums and claim history is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' **Motion in Limine (Doc. 77)** is **DENIED**.

Baton Rouge, Louisiana, this 29th day of August, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA